## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

CLEAN LABEL PROJECT FOUNDATION,

A 501(c)(3) corporation
280 E. 1St Ave., #873
Broomfield, Colorado 80038

                Plaintiff,

    v.

PHARMAVITE LLC,

A California limited liability company
8531 Fallbrook Ave.
West Hills, CA 91304

                Defendant.

Case No.   1:20-cv-3846

## NOTICE OF REMOVAL

Defendant Pharmavite LLC ("Pharmavite") hereby removes this case from the Superior Court of the District of Columbia, Civil Division, to the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 1446. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because this case is a class action in which the putative class exceeds 100 members, at least one plaintiff is diverse from one defendant, and the amount in controversy exceeds $5 million. Venue is proper under 28 U.S.C. § 1391 because this action was filed in the Superior Court of the District of Columbia, which is coextensive with the District to which this case has been removed.

## FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

1.      Plaintiff Clean Label Product Foundation ("Plaintiff") filed this action in the Superior Court of the District of Columbia on September 4, 2020. *See* Exhibit A, Complaint. On December 1, 2020, the Court granted Plaintiff's motion to file a First Amended Complaint ("FAC"). *See* Exhibit B, Order. Plaintiff served the FAC on December 2, 2020. *See* Exhibit C,

FAC; Exhibit D, Proof of Service. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the remainder of the Superior Court case file (including all documents other than those in Exhibits A-D) is attached hereto as Exhibit E.

2.     Pharmavite is a California limited liability company with its principal place of business in West Hills, California. Pharmavite manufactures, largely in California, Nature Made® brand vitamins and supplements. Plaintiff alleges that three of Pharmavite's prenatal supplements in a total of seven different sizes (the "Products") "are under-formulated with respect to folate/folic acid and adulterated with respect to quantifiable amounts of heavy metals and detectable amounts of pesticides." *See* Exhibit C, FAC, Introductory paragraph. Plaintiff further alleges that Pharmavite's labeling and advertising of the Products violates the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq*. *See e.g.,* Exhibit C, FAC, ¶¶ 53, 54, 198, 200-211.

3.     Plaintiff purports to bring this action in a representative capacity under two separate provisions of the CPPA. First, Plaintiff purports to asserts its claims under Section 28-3905(k)(1)(C), which permits a "nonprofit organization . . . on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, [to] bring an action seeking relief from the use of a trade practice in violation of a law of the district." D.C. Code § 28-3905(k)(1)(C). *See* Exhibit C, FAC, ¶¶ 213, 214 (referencing this provision). Second, Plaintiff purports to assert its claims under section 28-3905(k)(1)(D), which provides that a "public interest organization may, on behalf of the interests of a consumer or class or consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District. D.C. Code §28-3905(k)(1)(D)(i). *See* Exhibit C, FAC, ¶¶ 216, 217, 219, 220 (referencing this provision).

4.     Plaintiff seeks remedies available under D.C. Code §§ 28-3905(k)(2), including,

but not limited to, declaratory and injunctive relief, including a corrective marketing campaign. Plaintiff also seeks costs, attorneys' fees, expert fees, and prejudgment interest. *See* Exhibit C, FAC, Prayer for Relief.

## REMOVAL IS APPROPRIATE UNDER CAFA

5.     CAFA provides that federal courts have original jurisdiction over (i) a "class action" in which (ii) any plaintiff is diverse from any defendant, (iii) there are at least 100 members in the putative class, and (iv) the amount in controversy excess the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). Under 28 U.S.C. § 1441(a), any such action may be removed to the district court for the district and division embracing the place where the action is pending. "No antiremoval presumption attends cases involving CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens,* 574 U.S. 81, 89 (2014); *accord Bradford v. George Washington Univ.,* 249 F. Supp. 325, 331 (D.C. Cir. 2017).

### This case is a "class action" under CAFA

6.     Under CAFA, a class action is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure *or similar State statute* or rule of judicial procedure *authorizing* an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added).

7.     Whether an action under the District of Columbia's consumer protection law constitutes such a similar state statute is a question of District of Columbia law. *See In re U-Haul Int'l, Inc.,* No. 08-7122, 2009 WL 902414, at *1 (D.C. Cir. Apr. 6, 2009) (characterizing this inquiry as "a matter of District of Columbia law" that should be answered by "the local courts"); *Williams v. Martinez,* 586 F.3d 995, 1001 (D.C. Cir. 2009) ("[O]n questions of District of Columbia law this court defers to the D.C. Court of Appeals.")

3

8.      Pursuant to the CPPA, "public interest organizations may, on behalf of the interests of a consumer, or a *class of consumers,* bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or *class* could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice." D.C. Code §28-3905(k)(1)(D)(i) (emphasis added); Exhibit C, FAC, ¶ 219. Plaintiff expressly alleges that it brings this action under D.C. Code § 28-3905(k)(1)(D)(i), "on behalf of members of the general public who could bring the action under D.C. Code §28-3905(k)(l)(A)." *See* Exhibit C, FAC, ¶ 219. *See also id.,* ¶ 198 ("Pursuant to D.C. Code §28-3905(k)(l) and 28-39905(k)(2) [sic], the Plaintiffs bring this claim on behalf of themselves and the general public of the District of Columbia.").

9.      D.C. courts have confirmed that D.C.'s consumer protection law is a statute that authorizes—and compels—a class action. *See Rotunda v. Marriot Int'l, Inc.,* 123 A.3d 980, 989 (D.C. 2015); *Organic Consumers Ass'n v. General Mills, Inc.,* No. 2016 CA 6309 B, 2017 WL 2901210, at *5 (D.C. Super. Ct. Apr. 27, 2017). Here, Plaintiff, as the "master of [its] complaint," has affirmatively invoked section 28-3905(k)(1)(D), which authorizes—and, indeed requires—Plaintiff to bring this lawsuit as a class action. *Barnes v. District of Columbia,* 42 F. Supp. 3d 111, 120 (D.D.C. 2014) (emphasizing that the plaintiff "should have recognized that the defendant could exercise its statutory right of removal" based on the claims he chose to plead). That is sufficient to bring this lawsuit within the ambit of CAFA.

### The parties are sufficiently numerous to satisfy CAFA

10.      Although Plaintiff avoids defining the size of the putative class, it purports to bring this lawsuit on behalf of individuals in the District of Columbia who have purchased the Products within the limitations period (*i.e.,* since September 4, 2017). *See generally Samuel v. Wells Fargo Co.,* 311 F. Supp. 3d 10, 20 n.11 (D.D.C. .2018) ("Courts apply a three-year statute

of limitations to CPPA claims . . . ."). Pharmavite has access to IRI scan data, which confirms

that over 30,000 units of the Products have been sold in the D.C. metropolitan area each year

since 2017. That supports a reasonable inference that over 100 individuals purchased the

Products in the District of Columbia during the statute of limitations period and satisfied

CAFA's numerosity requirement.

<u>The parties are minimally diverse</u>

11.     The caption of the FAC reflects that Plaintiff is headquartered in Broomfield,

Colorado (*see* Exhibit C, FAC, at p.1), and that it brings this action on behalf of the general

public, *i.e.*, consumers of the Products, in the District of Columbia. *See id.*, FAC, introductory

paragraph and ¶¶ 198, 219.

12.     Pharmavite is a limited liability company with its principal place of business in

California. Pharmavite has no member incorporated, or with its principal place of business, in

District of Columbia.

13.     CAFA's minimal diversity requirement is satisfied because the class members

Plaintiff purports to represent are citizens the District of Columbia. Pharmavite is not a citizen of

the District of Columbia and is, at a minimum, diverse from the class plaintiffs.

<u>There is at least $5 million in controversy</u>

14.     In assessing the amount in controversy, "[a]bsolute certainty" as to the amount in

controversy is not required, rather a "present probability" that damages "meet the requirement" is

sufficient. *Comm. for GI Rights v. Calloway,* 518 F.2d 466, 472 (D.C. Cir. 1975). Moreover, "for

purposes of the Class Action Fairness Act [calculating the amount in controversy] is less a

prediction of how much the plaintiffs are ultimately likely to recover than it is an estimate of

how much will be put at issue during the litigation." *Lavelle v. State Farm Mut. Auto Ins. Co.,*

235 F. Supp. 3d 217, 224 (D.D.C. 2017) (internal citations and quotation marks omitted). Federal

courts have consistently emphasized that CAFA only requires a defendant to show that it "is reasonably possible that the potential liability exceeds $5 million." *Greene v. Harley-Davidson,* 965 F.3d 767, 772 (9th Cir. 2020). *See also Raskas v. Johnson & Johnson,* 719 F.3d 884, 887 (8th Cir. 2013) ("[W]hen determining the amount in controversy, the question is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.") (Citation and internal quotation marks omitted); *S. Fla. Wellness, Inc. v. Allstate Ins. Co.,* 745 F.3d 1312, 1315 (11th Cir. 2014) (noting that the amount in controversy is an "estimate of how much will be put at issue in the litigation" and that this "amount is not discounted by the chance that the plaintiffs will lose on the merits").

15.     Under 28 U.S.C. § 1332(d)(6), determining whether the matter in controversy exceeds the jurisdictional amount (*i.e.,* $5,000,000), the removing party bears the burden of offering a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.,* 574 U.S. at 89. In other words, Pharmavite only needs to offer this Court a plausible allegation that the amount in controversy exceeds $5 million.

16.     At this stage of the litigation, Pharmavite is not required to submit evidence substantiating the amount in controversy. "Evidence establishing the amount [in controversy] is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* To the extent there is any dispute as to the amount in controversy, Pharmavite expressly reserves the right to submit evidence substantiating its jurisdictional allegations. *See, e.g., Lavelle,* 235 F. Supp. 3d at 223 (denying motion to remand based on post-removal "evidence regarding attorneys' fees and punitive damages" and rejecting argument that the defendant "waived the right to use these factors in its calculation of the amount in controversy" because it did not submit this evidence alongside its notice of removal).

17.     Here, Plaintiff seeks an order enjoining Pharmavite from engaging in conduct

alleged in the Complaint, as well as injunctive relief requiring "corrective advertising to the residents of the District of Columbia that restores consumers." *See* Exhibit C, FAC, Prayer for Relief. "[T]he test for determining the amount in controversy is the pecuniary result to *either party* which the judgment would directly produce." *Tatum v. Laird,* 444 F.2d 947, 951 n.6 (D.C. Cir. 1971) (Citation omitted), *rev'd on other grounds,* 408 U.S. 1 (1972). "[C]ourts do not have to ascertain the value of injunctive relief precisely; so long as a plaintiff's pleadings amount to more than a 'formal allegation' that the relief is worth more than [the jurisdictional minimum], that is sufficient." *Info Strategies, Inc. v. Dumosch,* 13 F. Supp. 3d 135, 141-42 (D.D.C. 2014) (Citation omitted).

18.    Although Plaintiff does not describe with specificity the injunctive relief it seeks, in the event Plaintiff were to prevail on its claim, any injunctive relief ordered by this Court would very likely exceed $5 million. For example, if this Court prohibits sale of the Products in the District of Columbia, Pharmavite not only would have to stop all direct sales of these products in brick-and-mortar stores in the District of Columbia and effectuate the removal of the Products from store shelves, but it also would have to monitor to ensure that the Products are not resold by retailers within the District of Columbia. This would result in losses of several million dollars to Pharmavite. Based on Pharmavite's investigation moreover, some on-line retailers, including Amazon, would not be able to execute an order to not sell the Products only in the District of Columbia, and would discontinue the Products entirely, which Pharmavite estimates would result in losses of more than $4 million in sales in the first year alone.

19.    By way of further example, if the Court were to order Pharmavite to reformulate, repackage, and/or relabel the Products, such changes would need to occur on a nationwide basis, and would require Pharmavite to initiate substantial changes to its supply chain and manufacturing process. The cost to Pharmavite of complying with this kind of injunctive relief

would be significant.

20.     In addition, the scale of Plaintiff's requested "corrective advertising" campaign could include print, television, digital, radio, and other types of advertisement in the District of Columbia. Such a campaign would require Pharmavite to use both internal and external resources to develop and deploy the campaign. The cost of this campaign alone likely could come close to, or even exceed $5 million. *See, e.g., Fefferman v. Dr. Pepper Snapple Grp., Inc.,* No. 3:13-cv-00160-H (KSC), 2013 WL 12114486, at *3 (S.D. Cal. Mar. 12, 2013) (noting that, "[i]n total, the corrective advertisement campaign would cost Defendants approximately $4,985,000).

21.     Plaintiff's request for attorneys' fees and experts' fees should also be considered on removal. *See* Exhibit C, FAC, Prayer for Relief. "Attorney fees are part of the amount in controversy if they are provided for by statute or contract." *Sloan,* 2015 WL 9272838, at *9 (internal quotations and citations omitted). The CPPA provides for attorneys' fees in the same statutory provision invoked by Plaintiff in the Complaint. D.C. Code § 28-3905(k)(2)(B) (providing for attorneys' fees). While the amount of attorneys' fees that Plaintiff will seek is not yet known, attorneys' fee awards in other cases brought under the same statue have been substantial. *See, e.g., Beck v. Test Masters, Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 18, 20 (D.D.C. 2014) (awarding $927,707.89 in attorneys' fees and expenses); *see also Williams v. First Gov't Mortg. & Invr's Corp.,* 225 F.3d 738, 743, 746-47 (D.C. Cir. 2000) (affirming award of $199,340 in attorneys' fees).

22.     Finally, a reasonable reading of Plaintiff's FAC indicates that Plaintiff does, in fact, seek monetary damages. Plaintiff's prayer for relief seeks a judgment for "the remedies available under D.C. Code § 28-3905(k)(2)(A-F)." Exhibit C, FAC, Prayer for Relief. These remedies explicitly include actual damages, as well as "[t]reble damages, or $1,500 per violation,

whichever is greater." D.C. Code § 28-3905(k)(2)(A)(i), (ii). Several courts have determined the amount in controversy involving these statutory damages by multiplying the total number of products sold by $1,500. *See, e.g., Sloan v. Soul Circus, Inc.*, No. CV 15-01389 (RC), 2015 WL 9272838, at *8 (D.D.C. Dec. 18, 2015) (holding that statutory damages flow from each "purchase or receipt" of consumer goods) (emphasis original); *Fahey v. Godiva Chocolatier, Inc.*, No. CV 19-2128 (JDB), 2020 WL 805776, at *5 (D.D.C. Feb. 18, 2020) (holding that the amount in controversy included "$7,500—one violation for each individually wrapped candy bar"). Here, the number of units of the Products sold in the District of Columbia during the limitations period are such that monetary damages under CPPA, including treble damages or penalties, would put the amount in controversy in this case in excess of CAFA's jurisdictional minimum.

23.     In the aggregate, the value of Plaintiff's request for injunctive relief, corrective advertising, possible repackaging, attorneys' fees, and possible statutory damages easily exceeds the $5 million in total required for CAFA jurisdiction.

## OTHER REQUIREMENTS FOR REMOVAL ARE MET

24.     28 U.S.C. § 1446(b) provides that notice of removal of a civil action must be filed within thirty days of service of the initial pleading. In this case, Pharmavite was served on December 2, 2020. *See* Exhibit D, Proof of Service. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), the deadline for filing this notice of removal is January 1, 2021. This notice of removal is thus timely filed.

25.     Pharmavite has not filed any pleading in the Superior Court responding to the Complaint.

26.     Pursuant to 28 U.S.C. § 1446(d), Pharmavite will promptly give written notice of the filing of this Notice of Removal to all parties, and a copy of this Notice will be filed with the Clerk of the Superior Court.

Dated: December 29, 2020                    Respectfully submitted,

                                            */s/ Mark H. M. Sosnowsky*
                                            Mark H.M. Sosnowsky (No. 979960)
                                            FAEGRE DRINKER BIDDLE & REATH LLP
                                            1500 K Street, N.W., Suite 1100
                                            Washington, D.C. 20005
                                            Tel: 202-354-1327
                                            Fax: 202-230-5354
                                            mark.sosnowsky@faegredrinker.com

                                            *Attorney for Defendant Pharmavite LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2020, I electronically filed the **Notice of Removal** and accompanying documents with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the counsel listed below.  In addition, service will be made by first class U.S. Mail, postage prepaid, on the following:

Travis Pittman, Esq.
jtpittman@hphattorneys.com
Holmes Pittman & Haraguchi, LLP
P.O. Box 380
Chester, MD 21619
(410) 482-9505

Kristen M. Ross, Esq.
Kristen.ross@didmlaw.com
Davitt, Lalley, Dey & McHale, PC
1971 Beltline Ave., Suite 106
Grand Rapids, MI 49525
(202) 750-0355

/s/ *Mark H.M. Sosnowsky*
Mark H.M. Sosnowsky